# MAYOR AND CITY COUNCIL OF BALTIMORE

## *vs.*

## MARY MATTERN.

*Negligence*: *municipalities; streets; woman carrying child; question of contributory negligence; for jury; taking case from jury.   Expert witnesses*: *physician who examined plaintiff.*

Where a woman, in crossing a street, steps into a hole between the flagstones, falls and receives injuries, the fact that she had picked up and carried in her arms a small child of eighteen months and was thereby prevented from seeing the hole, is not such evidence of contributory negligence as to justify a directed verdict for the defendant.                    p. 16

Whether a plaintiff was using due care or not was proper for the consideration of the jury.                    p. 16

In such cases, it is only when the conduct of the plaintiff is so manifestly reckless as to leave no opportunity for difference of opinion in the minds of ordinarily prudent men, that it is proper to withdraw the question from the consideration of the jury.                    p. 16

Where, in a negligence case, a physician examined the injuries of the plaintiff and gave testimony as to such based largely upon such examination, the fact that he was also asked a hypothetical question, based on the evidence given in Court, can not make his evidence inadmissible.                    p. 18

*Decided April 26th, 1918.*

Appeal from the Court of Common Pleas of Baltimore City.   (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, and CONSTABLE, JJ.

*S. S. Field, City Solicitor* (with whom was *Edward J. Colgan, Jr.,* on the brief), for the appellant.

*J. Cookman Boyd* and *Peter J. Campbell* on the brief for the appellee.

URNER, J., delivered the opinion of the Court.

While the appellee was passing over a street crossing in Baltimore, with her little child in her arms, her foot was caught in a hole between two flagstones and she was thrown down and sustained a serious injury to her knee, for which she brought suit against the city and recovered the judgment which is the occasion of this appeal.

The principal exception in the record was taken to the refusal of the trial court to instruct the jury that, according to the undisputed evidence the plaintiff did not exercise reasonable care to avoid the accident, but by her negligence contributed directly to the injury of which she complains, and that the verdict should, therefore, be for the defendant. This prayer, of course, presupposed the existence of primary negligence on the part of the city in respect to the condition of the street crossing at the point where the plaintiff was injured.  It was estimated by the witnesses that the hole between the flagstones was six to eight inches deep, about six inches wide and from six to twelve inches long.  It had been there for a period of four or five months before the accident. Apparently it had resulted from the wear of wagon wheels in the space between the two stones.

The accident occurred in the daytime, and the theory of the city's prayer was, that the defect in the street was obvious to anyone using due care, and that because of her failure to avoid it the plaintiff should be judicially declared to have been guilty of contributory negligence.

It was testified by the plaintiff that when she came to the street crossing she took up her 17-months-old baby in her arms to help it over to the other side, and that in passing over she did not see the hole between the stones, as she was looking toward the opposite gutter and curb, beyond which the child was to be carried. She stated that if she had been looking for defects in the street, she might have seen the hole into which she stepped, but that she supposed the crossing was all right, and she was going over it as carefully as she could under the circumstances. Upon this evidence the Court below was clearly right in declining to hold the plaintiff guilty of contributory negligence as a matter of law. The question as to whether she exercised ordinary care to avoid the accident was properly submitted to the jury as an issue of fact, in a prayer granted at the defendant's request; but it would be pressing the doctrine of contributory negligence very far to hold that a case like the present should be withdrawn from the jury on that ground. It was entirely natural that the plaintiff should have carried her child over the crossing, and it is easy to understand how the hole, as located, could escape her attention while she was thus engaged. The fact that she failed to notice the defect in the crossing, and assumed it to be safe, as she passed over it with her child in her arms, is certainly not such a conclusive indication of negligence as to prevent the submission of the question to the jury. Her conduct was not so manifestly reckless as to "leave no opportunity for difference of opinion as to its imprudence in the minds of ordinarily prudent men." It would have to deserve such a characterization before her right to have the jury pass upon the issue could be denied. *B. & O. R. R. Co.* v. *Wiley,* 72 Md. 40; *McCarthy* v. *Clark,* 115 Md. 464; *Commrs. of Delmar* v. *Venables,* 125 Md. 478.

In the case of *Knight* v. *Baltimore,* 97 Md. 647, cited by the appellant, the driver of a wagon was thrown from his seat and injured when one of the wheels ran into a hole in the middle of the street. It was held that his own negligence contributed to his injury because he could readily

have seen the hole, which was visible at a distance of half a square, but he was talking to a companion and was not looking ahead as due care would have prompted him to do in such a situation. But in stating that conclusion this Court observed that "greater watchfulness is required of the driver of a team upon a city street than of a pedestrian upon a sidewalk."

The only other grounds on which the appellant contends for a reversal are that the physician who attended the plaintiff was permitted to be asked as a witness whether the condition in which he found her knee three days after the accident could have resulted from that occurrence as described in the plaintiff's testimony, and that a hypothetical question, allowed to be propounded to the same witness as to the permanence of the injury was an incorrect statement of the facts upon which his expert opinion was to be based.

The point sought to be raised in the objection to the first of the questions just noted is that the accident as described by the plaintiff did not necessarily involve any injury to her knee. This objection is without force in view of the testimony of the plaintiff that when her foot went into the hole she was thrown down and sustained an injury to her knee by which it has ever since continued to be affected.

The other question objected to was partly hypothetical, and was based in part upon the direct knowledge of the witness, as the physician who observed and treated the injury, in regard to the permanence of its effects. It is urged that the hypothetical portion of the question overstated the plaintiff's testimony as to the extent to which the injury disabled her from performing her usual household duties. It was assumed by the question that she had testified to being unable to attend to her housework and move around because of the condition of her knee, and it is said that her testimony in fact did not disclose such a complete state of disability. When the interrogatory is taken as a whole it does not convey the idea that the plaintiff had described her condition as being one of total incapacity for work or movement about

her home. It refers to her testimony as being to the effect that since the accident she suffers severe pain in her knee, when it is about to rain; that before this injury she was able to do her own housework, but that now when she attempts to do any washing there are times when her knee apparently gives way and she must sit down and rest for hours, and sometimes as much as a day. It is immediately in this connection in the question that the statement occurs as to her being unable to move around and do her housework. The plaintiff actually testified on this subject, in part, as follows: "Now in cloudy weather the pain is terrible; they shoot up and down in me and I have to sit down for hours, and if I am washing at the tub I have to sit down until the pain leaves me, and then maybe go back and try to do some more washing, a little more, but I can not do it. I have been sending my wash to the laundry, but a few fine pieces I try to keep home and do myself, and I have to do my own housework, what I can, and what I cannot has to go dirty, as I am no millionaire and I can not afford to hire anyone. My knee, even when it does not hurt, is all trembling."

There does not appear to us to be any substantial difference between the testimony given by the plaintiff and that attributed to her in the hypothetical question. Besides, the answer of the physician to the question shows that his opinion as to the permanence of the injury was based largely upon his own professional observation of its condition. For the reasons stated we think this evidence was properly admitted.

*Judgment affirmed, with costs.*