KIRSNER ET AL. *v.* FLEISCHMANN ET AL.

[No. 297, September Term, 1970.]

*Decided March 3, 1971.*

*Motion for rehearing filed April 2, 1971; denied April 5, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Russell Jay Benneti,* with whom were *Bernard J. Sevel* and *Bertram M. Goldstein* on the brief, for appellants.

*Allan H. Fisher, Jr.,* with whom were *Arnold Fleischmann* and *Charles S. Winner* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

This dispute is over a problem as ancient as the practice of law: the payment of attorney fees. The disgruntled client and appellant is Milton F. Kirsner, who is himself a member of the bar, although he is now primarily active in the real estate business. He appears in this case individually and as president of twenty corporations (also appellants) in which he is sole or principal stockholder. He and his corporations were made defendants in the present action for resisting the appellees' attempts to col-

lect a $38,497.65 contingent fee for their services in a tax case. Appellee Fleischmann is a tax attorney, while appellees Sigel and Felcher were Kirsner's own Certified Public Accountants. Silber, who is both an accountant and attorney, entered the case at Fleischmann's request as his co-counsel. Together the appellees sought to obtain summary judgment for the claimed amount (plus interest) in the Superior Court of Baltimore City. The trial judge, Howard, J., granted their motion on the ground that there was nothing before him which "created a genuine dispute of any material fact in this case." We are in complete agreement with this observation.

The memorandum of the contract which brought this case into being was dated July 26, 1966 and was subsequently filed as an exhibit in the appellees' motion for summary judgment. It reads as follows:

> Dear Mr. Fleischmann:
>
> This letter is to confirm our oral understanding authorizing you to act as attorney on my behalf and on behalf of each of the corporations, listed on the schedule attached (each of which I am the president and the officer authorized to act), in connection with the income tax problem and Internal Revenue Service audit dated June 29, 1966, jointly with Myer Louis Sigel and Bernard Felcher, my accountants.
>
> You will be paid the sum of Seven Thousand Five Hundred Dollars ($7500) in retainer fees and fifteen per cent (15%) of all savings on taxes, penalties and interest resulting to these corporations and to me when compared to the audit dated June 29, 1966.
>
> /s/ Milton F. Kirsner,
> Individually and on behalf of
> said corporations

On April 29, 1969 Fleischmann and Silber informed Kirsner in a letter (included as an exhibt in Kirsner's op-

posing affidavit) that they had secured an offer from the Internal Revenue Service which reduced the claimed tax deficiency of $346,399.82 to $172,050.02.[1] In that letter they took cognizance of Kirsner's long illness and his strong reluctance to "aggregate" the corporations' incomes for tax purposes. They pointed out that nevertheless this was an "eminently reasonable and fair" offer, which Kirsner did not have to accept, but if he did not accept, they were prepared to strike their appearance as counsel. Fleischmann and Silber also made it clear that in their opinion the 15% counsel fee had been completely earned. Sigel and Felcher concurred in this letter.

Although Kirsner now claims that letter amounted to an abandonment of the contract, he ultimately accepted the offered savings. On July 1, 1969, Judge Sterett of the Tax Court of the United States placed his signature on seventeen consent decrees resulting in the indicated tax saving for the corporations and, as president of the real estate companies involved, Kirsner signed an assenting stipulation which appeared on each decree. By August 1, 1969 Kirsner attempted to repudiate these settlements, causing Fleischmann and Silber to withdraw from the

---

1. The final savings on which the judgment was based was $256,651.01. Calculating the total savings in taxes, interest and penalties, Fleischmann filed the following statement of account as an exhibit:

| | | |
|---|---|---|
| Taxes and Penalties, per agent's report | $346,399.82 | |
| Taxes and Penalties, per actual assessments | 150,000.00 | |
| *Savings in Taxes and Penalties* | | $196,399.82 |
| Interest Calculated on deficiencies, per agent's report | 108,324.70 | |
| Interest Calculated on actual assessments | 48,073.51 | |
| *Savings in Interest* | | 60,251.19 |
| *Total Savings* | | $256,651.01 |
| *Fee—as agreed—@ 15% of Savings of $256,651.01 in tax, penalties and interest* | | 38,497.65 |

Kirsner has not questioned the mathematical accuracy of this computation.

case. The appellant obtained a new attorney who filed a motion in the United States Tax Court to have the consent decrees vacated. This request was denied and although it is still pending in the United States Court of Appeals for the Fourth Circuit (it had not been terminated as of the filing date of this opinion), the appellees successfully pressed on with their claim for the contingent fee.

On appeal from the judgment ordering him to pay the contingent fee, Kirsner has attacked every aspect of the transaction with the appellees, asserting that the pleadings, affidavits, exhibits and testimony raised material issues of fact which should have prevented summary judgment as a matter of law. The following list should suffice to show the breadth of his attack.

> 1. The contract was ambiguous, thus necessitating an evidentiary hearing to determine the intent of the parties.
>
> 2. The contingent fee sought was unconscionably high, and the fee arrangement was illegal.
>
> 3. The Tax Court case has not yet been terminated and hence the performance required by the contract has not yet been completed.
>
> 4. The appellees had abandoned their employment under the contract.
>
> 5. Neither Silber nor Felcher nor Sigel was a party to the contract.
>
> 6. The fee obligation was several not joint, and should have been computed on a quantum meruit basis rather than on the agreed percentage, and
>
> 7. The trial court erroneously decided contested issues of fact, instead of simply ascertaining if such issues existed.

Maryland Rule 610 (d) 1 provides that in a motion for summary judgment:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admis-

sions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."

As Judge Singley, speaking for the Court in *Lipscomb v. Hess*, 255 Md. 109, 118, 257 A. 2d 178 (1969), has noted:

"The limitations on summary judgment procedure are too well known to require elaboration. It is not a substitute for trial but a hearing to determine whether a trial is necessary, *Whitcomb v. Horman*, 244 Md. 431, 224 A. 2d 120 (1966); *Strickler Engineering Corp. v. Seminar, Inc.*, 210 Md. 93, 122 A. 2d 563 (1956), when there is no genuine controversy, *Pullman Co. v. Ray*, 201 Md. 268, 94 A. 2d 266 (1953). The purpose of the hearing is not to determine disputed facts, but to determine whether such issues exist. *Horst v. Kraft*, 247 Md. 455, 231 A. 2d 674 (1967); *Carroccio v. Thorpe*, 222 Md. 38, 158 A. 2d 660 (1960); *Tellez v. Canton R.R. Co.*, 212 Md. 423, 129 A. 2d 809 (1957); *White v. Friel*, 210 Md. 274, 123 A. 2d 303 (1956). If facts are susceptible of more than one inference, the inferences must be drawn in the light most favorable to the person against whom the motion is made, *Lawless v. Merrick*, 227 Md. 65, 175 A. 2d 27 (1961), and in the light least favorable to the movant, *Howard Cleaners of Baltimore, Inc. v. Perman*, 227 Md. 291, 176 A. 2d 235 (1961); *Roland v. Lloyd E. Mitchell, Inc.*, 221 Md. 11, 155 A. 2d 691 (1959)."

*See also Shatzer v. Kenilworth Warehouses, Inc.*, 261 Md. 88, 274 A. 2d 95 (1971) and *Brown v. Suburban Cadillac, Inc.*, 260 Md. 251, 272 A. 2d 42 (1971).

Viewing the appellants' attempted defense to the granting of summary judgment, we have concluded that their various allegations do not reveal the presence of a genuine

controversy of any material fact. For convenience we shall refer to Kirsner and the corporations he represents in the singular person.

Kirsner's first assertion, which challenges the clarity of the contract, appears to focus on the same questions he raises in points three and five, which are concerned with when payment was due and who was to be paid. We shall deal with each of these matters separately. Payment under the contract was clearly to· be preceded by performance. Whether performance was completed may or may not be related to the termination of the tax case. Whatever relationship exists between these closely intertwined questions, we think the ultimate result is frankly a matter of legal deductions from undisputed facts that have no controverted secondary factual inferences. See *Fenwick Motor Co. v. Fenwick,* 258 Md. 134, 138-39, 265 A. 2d 256 (1970). Kirsner, acting individually and on behalf of his corporations, has never denied that he affirmatively assented to the decrees. Nor does he challenge the legal effect of his acceptance of the tendered performance of the contract. Kirsner had at least two major objections to the appellees' handling of the case, namely, their inability to avoid aggregating the corporations' incomes and their insistence. that they would pursue the matter no further before the tax court. Valid or not these make no difference, for any objection he may have harbored before agreeing to the settlement was completely waived by knowingly and voluntarily accepting less than what he now claims was strict performance. *John B. Robeson v. Gardens,* 226 Md. 215, 223, 172 A. 2d 529 (1961) ; 17 Am.Jur.2d, *Contracts* § 392 (1964).

Kirsner's attempted repudiation of his own acceptance is made even less tenable by the fact (which he does not contest) that he endorsed the decree which by its very terms recited that it had been entered pursuant to the agreement of the parties. Either an endorsement or a recitation such as this (and certainly both together on a decree) add a critical element to his contractual act: judicial conclusiveness. *Mercantile Trust Co. v. Schloss,* 165

Md. 18, 166 A. 599 (1933) ; 3 *Freeman on Judgments,*
§§ 1349 and 1350 (5th ed. 1925). Had we the benefit of
a final decision upholding the tax court decree, it would
be a simple matter to invoke the rule announced in *Cox
v. Md. Elec. Rwys. Co.,* 126 Md. 300, 304, 95 A. 43, L.R.A.
1917A, 270 (1915) that ordinarily a judgment by consent,
having been enrolled "under the eye and with the sanc-
tion of the court . . . should be considered as a judicial
act not open to question or controversy in any collateral
proceeding . . . ." *See also Freeman on Judgments, su-
pra,* § 1352. We detect no problem, however, with the
fact that the appeal from the denial of the motion to va-
cate is still pending, for Kirsner has offered no legal or
logical theory as to why the vacation of the consent de-
cree would have any necessary effect on the acceptance
of performance which served as a basis for that decree.
Indeed, he has never attempted to deny the critical fact
of his acceptance.

Kirsner has offhandedly raised some question concern-
ing his mental capacity to consent to the decree and pre-
sumably to accept performance. At the hearing on the
motion for summary judgment his present tax lawyer
testified that medical reports concerning Kirsner's men-
tal capacity had been "proffered" to the tax court in the
motion to vacate and, during a colloquy with Judge How-
ard, Kirsner's trial attorney suggested that he could in-
troduce those records in this case. There was, however,
no attempt by affidavit or otherwise to follow this through
and properly make known to the trial judge evidentiary
facts capable of supporting this bare intimation. As Chief
Judge Prescott said for the Court in *Tri-State v. Middle-
man,* 238 Md. 41, at page 47, 207 A. 2d 499 (1965) :

> "Under summary judgment procedure 'general
> allegations which do not show the facts in de-
> tail and with precision are insufficient to pre-
> vent the award of summary judgment,' for the
> 'supporting and opposing affidavits must sub-
> mit evidentiary facts to the Court.' *Frush v.*

> *Brooks,* 204 Md. 315. See also *Strickler Engi-neering Co. v. Seminar Inc.,* 210 Md. 93; *Evans v. Johns Hopkins Univ.,* 224 Md. 234. If this were not so, the real and crucial purposes of summary judgment procedure—to avoid delays and unnecessary costs—would be subverted and thwarted, for if one could simply make a general denial or a bald statement that material facts were in dispute, without the actual statement of such evidentiary facts, there would be few, if any, summary judgments granted."

An identical criticism may be leveled at Kirsner's bare allegations that the contingent fee was unreasonably high and that the fee arrangement was illegal under the Internal Revenue procedure rules. In ruling on these points in a demurrer filed early in the summary judgment case, Judge Howard admonished Kirsner that these allegations would require factual support. No attempt was ever made to supply that deficiency in the opposition to the motion for summary judgment.

Kirsner also contended that the appellees had abandoned the contract by striking their appearance as counsel. As the only possible evidentiary support for this assertion is the threat of withdrawal contained in the April 1969 letter from Fleischmann and Silber to Kirsner, we have little difficulty in determining that the appellant has completely failed to raise a material factual issue in this regard. If, as we have decided, the appellees' performance had been completed and accepted, they had no further obligation to continue representing their former client, especially while he attacked the fruits of their labor. Other than payment, the acceptance of performance and the signing of the decree was the terminus of this contractual relationship; what the parties did or threatened to do after this point simply has no relevance to the question of liability. As we have held in *Parklawn v. Nee,* 243 Md. 249, 254, 220 A. 2d 563 (1966):

> "In order to prevent the granting of a motion

for summary judgment the objecting party must show more than that there was a question of fact presented, he must, of course, also show that the resolution of that question will somehow affect the outcome of the case, *i.e.*, that it is a material fact."

With the determination that performance under the contract had been finally accepted by Kirsner, we think it is obvious that payment should be according to the percentage formula set forth in the contract itself rather than on a quantum meruit basis. It is equally obvious that Judge Howard has not decided controverted issues of material fact but only ascertained that no such issues existed. This leaves for discussion a point that was never placed before him for decision, and two points which he never expressly decided.

Dealing first with what was not raised below, we find that no objection was made in the trial court to the inclusion of the accountants, Sigel and Felcher, as parties. This question cannot now be reviewed on appeal. Maryland Rule 885; *Schiller v. Lefkowitz*, 242 Md. 461, 476, 219 A. 2d 378 (1966) ; *Guerassio v. American Bankers*, 236 Md. 500, 504, 204 A. 2d 568 (1964). Kirsner did make timely objection to Silber's status as a party and to the undiscriminating method by which the trial court entered judgment in a single amount against all of the appellants as a group, especially since three of the corporations gained no tax advantages whatsoever. As far as the formal rendition of the judgment is concerned, we perceive no error, for the contract on its face calls for a joint and several obligation to pay. There is, of course, no reason why Kirsner cannot apportion the cost of the judgments according to the proportionate losses or benefits in tax savings each corporation received under the consent decrees. The inclusion of Silber as a party, however, was erroneous, for Kirsner directly denied that he ever consented to or was consulted about his presence in the case. A remand will not be necessary to resolve this

rather minor question of fact since the appellees admit and Kirsner has never denied that Fleischmann retained Silber "at no additional expense to any of the Defendants." Silber, of course, can look to Fleischmann for his compensation. Accordingly, summary judgment in favor of the appellee Silber will be reversed and entered against him. Rules 610 d 1, 872 b, 875 a and b. Summary judgment in favor of the other three appellees will be affirmed.

> *Judgment in favor of all the appellees except Samuel L. Silber affirmed and judgment is entered in favor of the appellants against Samuel L. Silber for costs. All costs on appeal to be paid by the appellants.*